UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Dominique Behr and Tessa Behr,          File No. 24-cv-2183 (ECT/DJF)

       Plaintiffs,

v.                              **OPINION AND ORDER**

Radisson Hotels Management Company, LLC, *successor in liability for RB Minneapolis Management LLC*, and G4S Secure Solutions (USA), Inc.,

       Defendants.

---

Christopher A. Johnston and Christopher P. Martineau, Johnston Martineau PLLP, Roseville, MN, for Plaintiffs Dominique Behr and Tessa Behr.

Lance D. Meyer, Lukas Belflower, and Michael M. Skram, O'Meara Wagner, P.A., Edina, MN, for Defendant G4S Secure Solutions (USA), Inc.

Jeffrey M. Markowitz and Sarah E. Bushnell, Arthur, Chapman, Kettering, Smetak & Pikala, PA, Minneapolis, MN, for Defendant Radisson Hotels Management Company, LLC.

---

Plaintiffs Dominique and Tessa Behr are sisters.  In February 2021, they spent one night at the Radisson Blu Downtown Minneapolis Hotel (the "Hotel").  That night, five males gained access to the Behrs' room and assaulted them over several hours.  The assaults were especially brutal.  As the operative Amended Complaint describes them, the Behrs "were subjected to savage sexual assaults and battery" over several hours, and Tessa was "shot multiple times by one or more of the males."

The Behrs brought this case against the Hotel's successor entity, Radisson Hotels Management Company ("Radisson"), and the entity responsible for providing security services at the Hotel when the assaults occurred, G4S Secure Solutions (USA) ("G4S"). The Behrs claim that Radisson and G4S were negligent and are therefore liable for the injuries they suffered from the assaults.

Radisson seeks dismissal under Federal Rule of Civil Procedure 12(b)(6), and G4S seeks judgment on the pleadings under Rule 12(c). The motions will be granted. The basic dismissal-prompting problem is that the Amended Complaint does not plausibly allege the assaults were foreseeable, but there are other problems too. The Behrs will be given the opportunity to file a second amended complaint. If they choose not to pursue that course, the Amended Complaint will be dismissed with prejudice and judgment will be entered.[1]

---

[1]     There is subject-matter jurisdiction over this case based on diversity of citizenship. 28 U.S.C. § 1332(a). The Behrs brought this case originally in Hennepin County District Court. ECF No. 1 at 1; *see* ECF No. 1-1. G4S removed it, ECF No. 1, meaning it bore the burden to establish subject-matter jurisdiction, *Altimore v. Mount Mercy Coll.*, 420 F.3d 763, 768 (8th Cir. 2005). Radisson consented to the removal. ECF No. 1 ¶ 8. When the case was removed, the Behrs were Minnesota citizens. ECF No. 1 ¶ 5(a); *see Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011) ("It is axiomatic the court's jurisdiction is measured either at the time the action is commenced or, more pertinent to this case, at the time of removal."). By virtue of the citizenship of its members, Radisson was a citizen of Delaware and Maryland. *Id.* ¶ 5(b); *see Cypress Creek Renewables Dev., LLC v. SunShare, LLC*, No. 18-cv-2756 (PJS/DTS), 2018 WL 5294571, at *1 (D. Minn. Oct. 24, 2018) ("[T]o plausibly allege the existence of diversity jurisdiction in a case involving an LLC, a notice of removal must identify all of the members of the LLC and, as to each such member, its citizenship."). "Radisson Blu Minneapolis Downtown" was merely an assumed name of Radisson, meaning it was not a legal entity and did not count separately for purposes of determining the presence of diversity jurisdiction. *Cahoon v. L.B. White Co.*, No. 19-cv-0155 (WMW/ECW), 2019 WL 3719413, at *2 (D. Minn. Aug. 7, 2019). G4S was a Florida citizen. ECF No. 1 ¶ 5(d). And G4S plausibly alleged in the Notice of Removal—and the Behrs have not disputed—that "the matter in controversy

I

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A Rule 12(c) motion for judgment on the pleadings is assessed under the same standard as a Rule 12(b)(6) motion. *Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Lansing v. Wells Fargo Bank, N.A.*, 894 F.3d 967, 971 (8th Cir. 2018); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Cargill, Inc.*, 61 F.4th 615, 619 (8th Cir. 2023) (same). "As numerous judicial opinions make clear, a Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties . . . . The motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the

exceeds the sum or value of $75,000, exclusive of interest and costs." *Id.* ¶ 5(g); 28 U.S.C. § 1332(a).

district court."  5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed. 2004).

In adjudicating motions under Rules 12(b)(6) and 12(c), "courts are not strictly limited to the four corners of complaints," but may consider other matters, including "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned[] without converting the motion into one for summary judgment." *Dittmer Props., L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir. 2013) (quotations omitted); *see also Zean v. Fairview Health Servs.*, 858 F.3d 520, 526–27 (8th Cir. 2017) (explaining that consideration of matters outside the pleadings or evidence in opposition to the pleadings generally converts a Rule 12(b)(6) motion into one for summary judgment).

Defendants argue the operative First Amended Complaint incorporates all police records regarding the Behrs' assaults by reference and that this incorporation means the records' contents must be accepted as true.  *See* ECF No. 28 at 3, 5 n.2; ECF No. 36 at 3 n.3.  For two reasons, this contention is not persuasive.  First, the Amended Complaint does not incorporate all police records regarding the Behrs' assaults.  The Amended Complaint includes one reference to these records.  *See* Am. Compl. [ECF No. 20] ¶ 36.  In this single reference, the Amended Complaint relies on the records for a specific, limited purpose— to identify one G4S employee, "Mobley," by name.  *Id.*  The Amended Complaint nowhere expresses an intent to incorporate all police records by reference, and the pleading's reliance on the records for this narrow purpose does not effectively incorporate all police

records regarding the assaults for all purposes.  Second, Defendants seek to rely on the records to establish facts that cut against the Amended Complaint's allegations.  For example, in Radisson's view, the records "confirm" that at least one of the attackers was invited to the Behrs' room.  ECF No. 28 at 11.  The Amended Complaint does not allege the attackers were invitees, *see generally* Am. Compl., and the reasonable inference is that they were not.  In other words, incorporating and construing the police records as Defendants ask would violate the fundamental rule that, in the Rule 12(b)(6) and Rule 12(c) context, a complaint's allegations, along with reasonable inferences to be drawn from those allegations, are accepted as true.  *See LeMay v. Mays*, 18 F.4th 283, 288–89 (8th Cir. 2021) (refusing to accept the movant's characterizations of evidence at the motion-to-dismiss stage).  For these reasons, Defendants' motions will be adjudicated based on the Amended Complaint's allegations and nothing more.

II

The Behrs stayed at the Hotel the night of February 19, 2021, to February 20, 2021.  Am. Compl.  ¶¶ 2, 16.[2]  After checking in and spending time at the Hotel, the Behrs left for a short time.  *Id.* ¶ 40.  While they were away, a group of five males sought entry into the Hotel.  *Id.* ¶ 41.  The males encountered a G4S security guard at the Hotel's entrance, who asked whether the males possessed a room key.  *Id.* ¶¶ 36, 43.  The males presented "what may have been a room key," and the G4S guard let the group into the Hotel.  *Id.*

---

[2]     The Behrs were accompanied by two minor females who are not parties to this case or identified in the Amended Complaint.  Am. Compl. ¶ 16.  The minor females' presence and activities are not relevant to the adjudication of Defendants' motions.

¶ 44.[3]  The Hotel's front desk personnel did not ask the males for their names or whether they had registered with the Hotel.  *Id.* ¶ 45.  The males entered the Behrs' room and hid inside.  *Id.* ¶ 47.

The Behrs returned to their room, where they encountered the males.  *Id.* ¶¶ 48–49.  Some of the males possessed firearms, and "at least one of the males blocked the door" preventing the Behrs from exiting the room.  *Id.* ¶¶ 50–51.  "Over the next several hours," the Behrs "were subjected to savage sexual assaults and battery."  *Id.* ¶ 52.  "[A]t some point during the sexual assaults, . . . Plaintiff [Tessa Behr] was also shot multiple times by one or more of the males . . . [and] was also subjected to being repeatedly doused with a liquid in attempts to further humiliate her."  *Id.* ¶¶ 58–59.  The assaults lasted "several hours" and ended around 7:00 a.m. on February 20.  *Id.* ¶¶ 52, 60.

The assaults generated noises "loud enough to be heard outside" the Behrs' room.  *Id.* ¶ 54.  Though these noises awakened two guests who were staying on the same floor as the Behrs, *id.* ¶ 57, "throughout the entire time of these assaults, no security personnel or other employees of any of the defendants ever noticed the assaults taking place" or intervened to stop them, *id.* ¶ 62.

---

[3]    It is not obvious how to construe the allegation that the males presented "what may have been a room key."  Am. Compl. ¶ 44.  I conclude that the logical, most plaintiff-friendly understanding of the "what may have been a room key" phrase is that the item the males presented either was a room key or, if it was not, the item at least resembled a room key.  It would not be sensible to construe the sentence as alleging the males presented nothing at all.  That would have been an easy thing to allege, but the Amended Complaint doesn't say that.  It alleges they presented something.  And the Amended Complaint nowhere alleges the G4S guard acted negligently either by concluding the item was a room key or by not examining the item more closely to reach that conclusion.  *See generally* Am. Compl.

In the seven months preceding the assaults, police were called to the Hotel many times for various issues including reports of domestic abuse, a stabbing, a robbery, assaults, fights, many instances of "unwanted/suspicious person/trouble," loud parties, a person with a gun, a person with an unspecified weapon, disturbances, drug activity, and a "dead person." *Id.* ¶ 28. The Hotel was in downtown Minneapolis, which in 2021 experienced an increase in violent crime of 21% when compared with 2020. *Id.* ¶ 29. "[I]t is widely known in the hotel industry that a major risk of crime to guests of a hotel, [sic] is from intruders." *Id.* ¶ 24.

### III

Though there is room for misunderstanding, I read the Amended Complaint to assert six negligence theories, four against Radisson and two against G4S. *See id.* ¶¶ 69–139. To understand these theories, it helps to start with the big picture. "Negligence is the failure to exercise the level of care that a person of ordinary prudence would exercise under the same or similar circumstances." *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014). Under Minnesota law, a plaintiff alleging negligence must show "(1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) that the breach of the duty was a proximate cause of the injury." *Id.* Ordinarily, "a person does not owe a duty of care to another—e.g., to aid, protect, or warn that person—if the harm is caused by a third party's conduct." *Id.* at 177–78. This case fits the "no duty to protect from a third party" rule—that is, third parties (the male attackers) injured the Behrs, and the Behrs claim that Radisson and G4S failed to protect them from the assailants. The Behrs' six negligence

theories depend on showing either exceptions to this general rule or, perhaps, that this general rule does not apply.

In the order they will be addressed here, the six theories are as follows: (1) The Behrs claim Radisson breached its duty as an "innkeeper." *Id.* ¶¶ 113–139. (2) The Behrs claim Radisson's "own conduct" resulted in their injuries. *See id.* ¶¶ 80–94; *see also* ECF No. 40 at 2 (confirming Count 3 is based on an "own conduct" negligence theory). (3) The Behrs claim Radisson was negligent per se based on its violation of Minnesota statutes. *See* Am. Compl. ¶¶ 117–128. (4) The Behrs claim G4S's Hotel-based employees performed their work negligently and that, in turn, G4S is liable on a *respondeat superior* theory. *Id.* ¶¶ 69–74. (5) The Behrs claim G4S negligently hired, supervised, and retained its employees. *Id.* ¶¶ 75–79. (6) The Behrs claim Radisson is liable for G4S's negligence on an "apparent authority" theory. *Id.* ¶¶ 95–112. For relief, the Behrs seek damages for physical injuries, pain and suffering, and emotional distress, and to recover their incurred and future medical expenses. *See id.* ¶¶ 64–68.[4]

IV

A

Under Minnesota law, a person has a duty to protect another from harm caused by a third party (notwithstanding the general rule) "when there is a special relationship between a plaintiff and a defendant and the harm to the plaintiff is foreseeable." *Doe 169*, 845 N.W.2d at 178 (citing *Domagala v. Rolland*, 805 N.W.2d 14, 23 (Minn. 2011)). A

---

[4]    The Behrs' request for "underinsured motorist benefits," Am. Compl. at 17 (following "WHEREFORE" clause), is understood to be a typographical error.

"special relationship" is typically found in circumstances where "the plaintiff is in some respect particularly vulnerable and dependent on the defendant, who in turn holds considerable power over the plaintiff's welfare." *Donaldson v. Young Women's Christian Ass'n of Duluth*, 539 N.W.2d 789, 792 (Minn. 1995) (citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 56, at 374 (5th ed. 1984)). In Minnesota, a special relationship exists between hotels (or "innkeepers") and their guests. *Id.* Therefore, a hotel owes a duty to its guests to protect them "against foreseeable risk of danger attendant upon the maintenance and operation of [the] property." *Connolly v. Nicollet Hotel*, 95 N.W.2d 657, 663 (1959); *see Yang v. Voyagaire Houseboats, Inc.*, 701 N.W.2d 783, 790–91 (Minn. 2005) ("Innkeepers generally have a duty to take reasonable action to protect their guests.").

There is no question Radisson is responsible for a hotel, so the dispositive issue framed in the case's procedural posture is whether the Amended Complaint alleges facts plausibly showing that the attacks the Behrs suffered were foreseeable to Radisson. "Foreseeability" can be a fuzzy concept, but in a relatively recent case, *T.W. ex rel. McKenzie v. Walmart Stores, Inc.*, Chief Judge Patrick J. Schiltz thoroughly canvassed Minnesota cases and persuasively concluded that, under Minnesota law, the foreseeability question should not be framed widely, but rather by reference to the specific injury-producing chain of actions at issue in a case. No. 22-cv-1584, 2023 WL 3646685, at *5–7 (D. Minn. May 25, 2023). As Chief Judge Schiltz explained:

> The Minnesota Supreme Court has described the foreseeability inquiry as follows:

9

To determine whether the risk of injury to the plaintiff is "foreseeable," we "look at whether the specific danger was objectively reasonable to expect, not simply whether it was within the realm of any conceivable possibility." [*Whiteford ex rel. Whiteford v. Yamaha Motor Corp., U.S.A.*, 582 N.W.2d 916, 918 (Minn. 1998)]. The risk must be "clear to the person of ordinary prudence." *Connolly* . . . , 95 N.W.2d [at] 664 . . . . If the connection between the danger and the defendant's own conduct is too remote, there is no duty. *Germann v. F.L. Smithe Mach. Co.*, 395 N.W.2d 922, 924 (Minn. 1986).

*Doe 169*, 845 N.W.2d at 178. "The test is not whether the precise nature and manner of the plaintiff's injury was foreseeable, but whether 'the possibility of an accident was clear to the person of ordinary prudence.'" *Domagala*, 805 N.W.2d at 27 (quoting *Connolly*, 95 N.W.2d at 664). "When the question of foreseeability is a 'close case,' the question must be submitted to a jury to resolve . . . . But when foreseeability is clear, it should be decided by the court as a matter of law." *Smits ex rel. Short v. Park Nicollet Health Servs.*, 979 N.W.2d 436, 458 (Minn. 2022) (citations omitted).

The Minnesota Supreme Court recently addressed the issue of foreseeability in this context in *Smits*. In ruling that a mental-health provider did not owe a duty to protect the family of a discharged patient, the majority characterized the issue as whether it was "foreseeable that [the patient] would commit multiple homicides." *Id.* at 459. In contrast, the dissent characterized the issue more broadly as whether "there was an unreasonable risk that [the patient] might become dangerous." *Id.* at 451 (Hudson, J., dissenting). Obviously, the wider the foreseeability issue is framed, the easier it will be for the plaintiff to recover.

*       *       *

Plaintiffs' [wide] framing of the issue is difficult to reconcile with the decisions of the Minnesota Supreme Court in "own-conduct" cases in which a defendant was found to have a duty to protect a plaintiff from harms caused by third parties.

For example, in *Connolly v. Nicollet Hotel*—a foundational case cited frequently in contemporary own-conduct cases—the court examined whether a hotel had a duty to protect a pedestrian who was struck in the eye with a "mud-like substance" apparently thrown out of a hotel window by a rowdy guest. 95 N.W.2d at 661. The court framed its foreseeability inquiry quite narrowly: Rather than asking (for example) whether it was foreseeable to the hotel that one guest might be harmed by the misconduct of another, the court asked whether "the dropping of objects from the hotel windows by certain of those occupying the premises was within the range of foreseeability." *Id.* at 665.

In a more recent case, the Minnesota Supreme Court held that a school had a duty to protect a motorist who was injured in an accident caused by a student driving a van on a school-sponsored trip to an athletic competition. *See Fenrich*, 920 N.W.2d at 206–07. Again, though, the court framed the foreseeability inquiry quite narrowly. The court did not broadly ask whether it was foreseeable that a student driving a van to an athletic competition could injure another motorist, but rather asked whether it "was foreseeable that a teenage driver on a long trip, in a car with three other teenagers, could get distracted and collide with another driver." *Id.* at 206. In other words, the court built into the foreseeability inquiry (1) the age of the driver; (2) the length of the trip; (3) the number of other passengers in the car; (4) the age of those passengers; and (5) the cause of the specific accident.

*Id.* at *5–6 (fourth set of brackets added). Chief Judge Schiltz concluded that the specific injury-producing chain of events at issue in *T.W.* amounted to a "freak event" that may have been "conceivable, but . . . not reasonably foreseeable." *Id.* at *6.

Here, the Amended Complaint does not allege facts plausibly showing it was foreseeable to the Hotel that the five males who attacked the Behrs would assault Hotel guests. The Amended Complaint's only allegations regarding the assailants' pre-attack conduct are that: (1) a G4S employee "confronted" the five males when they entered the

Hotel; (2) the G4S employee asked whether the males possessed a room key; and (3) in response to the G4S employee's request, one of the males "present[ed] what may have been a room key." Am. Compl. ¶¶ 42–44. Assuming G4S's actions are attributable to Radisson for this claim's purposes, these allegations describe ordinary events—a group entering a hotel and, on being asked, appearing to present a room key. The Amended Complaint alleges no facts describing the group's characteristics, much more characteristics that might plausibly show it was "objectively reasonable to expect," *Whiteford*, 582 N.W.2d at 918, or "clear to the person of ordinary prudence," *Connolly*, 95 N.W.2d at 664, that the males would assault Hotel guests.[5] There are, for example, no allegations that anyone in the group was intoxicated, carrying a visible weapon, uttering threats, or acting in a threatening or harassing manner. Nor are there allegations that anyone in the group had a criminal record or had engaged in other past conduct indicative of a then-present danger of which Radisson or G4S was aware.[6]

---

[5]    At one point, the Behrs argue the appropriate inquiry is simply whether the Hotel had a duty to "protect against the wrongful act of intruders." ECF No. 40 at 14. Framing the question this way does not account for the foreseeability of injury-prompting actions and would result in strict liability. The argument is inconsistent with binding Minnesota cases. *Connolly*, 95 N.W.2d at 663–64.

[6]    The Amended Complaint disavows any theory that the assaults' early stages showed that further or repeated assaults were foreseeable. It alleges that "at least two other guests" heard the assaults, but it does not allege these guests or anyone else reported the situation to anyone with the Hotel. Am. Compl. ¶ 57. And it alleges that "no security personnel or other employees of any of the defendants ever noticed the assaults taking place." *Id.* ¶ 62. The Amended Complaint tethers its foreseeability theory to the attackers' entrance into the Hotel.

The Amended Complaint alleges numerous facts regarding the "widely known" risks intruders pose to hotel guests, the measures hotels generally take to address these risks, police calls to the Hotel during 2020 and 2021, and an increase in crime in the Hotel's vicinity, Am. Compl. ¶¶ 24–32, but I do not understand Minnesota law to permit a foreseeability finding based on these allegations. This is because the allegations do not address the specific events leading to the Behrs' assaults. *See T.W.*, 2023 WL 3646685, at *5–6. To argue that these general facts show foreseeability, the Behrs rely on *Erickson v. Curtis Inv. Co.*, 447 N.W.2d 165 (Minn. 1989). *Erickson* does not support the proposition that general allegations of the sort relied on by the Behrs plausibly show the foreseeability of their assaults. In *Erickson*, the Minnesota Supreme Court held that "[t]he operator or owner of a parking ramp facility has a duty to use reasonable care to deter criminal activity on its premises which may cause personal harm to customers." *Id.* at 169–70. To determine whether this duty is breached, the court explained, several factors must be considered, including "the location and construction of the ramp, the practical feasibility and cost of various security measures, and the risk of personal harm to customers which the owner or operator knows, or . . . should know, presents a reasonable likelihood of happening." *Id.* at 170. These context-specific factors frame the foreseeability question narrowly, just as the question is framed in other Minnesota Supreme Court decisions.[7]

---

[7]    If *Erickson* could be understood to frame the foreseeability question more broadly, it should be "limited to its facts" because the court "relied heavily on the unique features of a parking ramp that permitted criminal activity" to reach its decision. *Whebbe v. Beta Eta Chapter of Delta Tau Delta Fraternity*, No. A12-1675, 2013 WL 1188029, at *3 (Minn. Ct. App. Mar. 25, 2013). Hotels do not share the features of parking ramps that prompted

For clarity's sake, two arguments Radisson advanced in support of its motion deserve comment.  First, Radisson cites cases against bars, including *Boone v. Martinez*, 567 N.W.2d 508 (Minn. 1997), for the elements of the Behrs' innkeeper liability claim, *see* ECF No. 28 at 10–12.  Though cases applying Minnesota law refer to claims against both hotels and bars as involving "innkeeper liability," *see, e.g.*, *Yang*, 701 N.W.2d at 788–89 (defining "innkeeper" to include an "owner or operator" of a hotel and concluding that offeror of houseboats for rental was an innkeeper); *Alexander v. 1328 Uptown, Inc.*, No. 18-cv-1544 (ECT/ECW), 2020 WL 1644246, at *6 (D. Minn. Apr. 2, 2020) (referring to claim against bar as one for "innkeeper liability"), innkeeper liability claims against hotels do not seem to share identical elements with innkeeper liability claims against bars, *compare Connolly*, 95 N.W.2d at 663 ("The failure of a hotel owner and operator to take reasonable precautions to eliminate or prevent conditions of which he is or should be aware and which might reasonably be expected to be dangerous to the public may constitute negligence."), *with Alexander*, 2020 WL 1644246, at *6 (noting that, "[t]o prevail on an innkeeper liability claim under Minnesota law [against a bar], a plaintiff must show (1) notice of the offending party's vicious or dangerous propensities by some act or threat, (2) adequate opportunity for the innkeeper to protect the injured patron, (3) failure on the part of the innkeeper to take reasonable steps to do so, and (4) foreseeable injury." (quotation omitted)).  *Connolly* identifies the elements of an innkeeper-liability claim against a hotel.

---

the Minnesota Supreme Court's decision to impose a duty to deter criminal activity on parking ramp operators and owners in *Erickson*.

Cases involving innkeeper-liability claims against bars, like *Boone*, do not, so those cases are not relied on here.

Second, Radisson characterizes this case as arising from a "sexual assault," ECF No. 28 at 13, citing a Minnesota Court of Appeals case for the proposition that "[s]exual abuse will rarely be deemed foreseeable in the absence of prior similar incidents," ECF No. 28 at 13 (quoting *Doe 175 ex rel. Doe 175 v. Columbia Heights Sch. Dist.*, 873 N.W.2d 352, 360 (Minn. Ct. App. 2016) (quotation omitted)), and argues that the Amended Complaint's failure to allege that the assailants previously committed similar behavior of which Radisson was aware shows the absence of foreseeability. *Id.* The Behrs suffered more than "sexual" assaults. The Amended Complaint alleges they were battered, and that Tessa was "shot multiple times" and "repeatedly doused with a liquid in attempts to further humiliate her." Am. Compl. ¶¶ 52, 58–59. Considering the nature of the assaults and differences between innkeeper-liability claims against hotels and third-party sexual-abuse claims generally, it was not essential for the Behrs to allege the assailants had previously committed sexual assaults, or that Radisson was aware of those assaults, to show foreseeability.

B

Minnesota "negligence law imposes a general duty of reasonable care when the defendant's own conduct creates a foreseeable risk of injury to a foreseeable plaintiff." *Domagala*, 805 N.W.2d at 23. "In other words, when a person acts in some manner that creates a foreseeable risk of injury to another, the actor is charged with an affirmative duty to exercise reasonable care to prevent his conduct from harming others." *Id.* at 26. In

15

*Fenrich*, the Minnesota Supreme Court described the "own conduct" duty as a second exception (after the special-relationship exception) to the general rule that "a person does not owe a duty of care to another . . . if the harm is caused by a third party's conduct." 920 N.W.2d 195, 201–02 (Minn. 2018) (quotation omitted). The court also explained that, at least when applied in cases involving harm caused by a third party, a defendant's conduct must amount to "misfeasance" to trigger the "own conduct" duty. *Id.* at 203. "If a defendant's conduct is mere nonfeasance, that defendant owes no duty of care to the plaintiff for harm caused by a third party." *Id.* (citing *Doe 169*, 845 N.W.2d at 178). "Misfeasance is active misconduct working positive injury to others." *Id.* (quotation omitted). "Nonfeasance is passive inaction or a failure to take steps to protect [others] from harm." *Id.* (alteration in original) (quotation omitted). Characterizing a defendant's action or inaction as misfeasance and nonfeasance can present a problem of "confounding complexity." *Domagala*, 805 N.W.2d at 22.

For two reasons, the Amended Complaint does not allege facts plausibly showing the own-conduct exception against Radisson. First, the foreseeability analysis does not change from the special-relationship exception to the own-conduct exception. *See Connolly*, 95 N.W.2d at 665. As discussed in the previous section, the Amended Complaint does not plausibly allege the attacks were foreseeable.

Second, the Amended Complaint does not plausibly allege misfeasance by Radisson. It grounds Radisson's own-conduct liability on a series of allegations regarding various security-related matters the Hotel did not undertake. *See* Am. Compl. ¶¶ 92(a)–(j). These allegations are general and conclusory. For example, several of the allegations claim

16

the Hotel failed to adequately hire, train, supervise, or retain its employees and contractors. *Id.* ¶¶ 92(e)–(h). Nowhere, though, does the Amended Complaint allege facts to support these conclusions. It alleges no facts regarding the Hotel's hiring processes or its hiring of any employee, or the Hotel's training, supervision, or employee-retention procedures generally or as it applied them to any employee. *See generally id.* Under basic pleading standards, it would be a mistake to decide that these allegations are enough to plausibly allege misfeasance. *Iqbal*, 556 U.S. at 678 (noting that "conclusory statements" do not contribute to showing a claim's plausibility).

Pleading problems aside, alleging the Hotel failed to take specific actions to protect guests from harm matches the Minnesota Supreme Court's definition of "nonfeasance." *Fenrich*, 920 N.W.2d at 203 (defining nonfeasance as "a failure to take steps to protect [others] from harm"); *see Vitek v. City of Eagan*, No. A22-1536, 2023 WL 4307702, at *3–5 (Minn. Ct. App. July 3, 2023) (holding that a city's failure to reduce a speed limit and a school district's failure to provide a "school-route plan" were allegations of nonfeasance); *see also Ariola v. City of Stillwater*, No. A14-0181, 2014 WL 5419809, at * 7–8 (Minn. Ct. App. Oct. 27, 2014) (holding that a county's failure to close a lake was "an allegation of nonfeasance"). Consistent with these Minnesota cases, other courts have found that a business's failure to implement additional or specific security measures is nonfeasance. *See, e.g.*, *Greek Islands Cuisine, Inc. v. YourPeople, Inc.*, No 4:24-CV-5045-TOR, 2024 WL 5223144, at *7 (E.D. Wash. Dec. 26, 2024) (holding that a defendant's alleged "failure to safely retain Plaintiffs' stored information" was nonfeasance); *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1158 (W.D. Wash. 2017) (holding that a

defendant's alleged failure to implement additional security measures "comprise numerous omissions or nonfeasance on the part of [the defendant]"); *Munoz v. City of Carson*, No. B237951, 2013 WL 4495674, at *3 (Cal. Ct. App. Aug. 21, 2013) ("This is a nonfeasance case because defendants allegedly failed to do certain things, namely they failed to provide adequate security at the park and warn plaintiff of the dangers there."); *Bethea v. Bristol Lodge Corp.*, No. CIV.A. 01-612, 2002 WL 31859434, at *15 (E.D. Pa. Dec. 18, 2002) (holding that a defendant's alleged failure to provide additional security measures was "more akin to nonfeasance"); *Terry v. Lincscott Hotel Corp.*, 617 P.2d 56, 61 (Ariz. Ct. App. 1980) (holding that a hotel's alleged failure to provide adequate security precautions and warn plaintiffs regarding previous hotel thefts were "allegations of non-feasance or acts of omission") (O'Connor, J.); *but see Ember v. B.F.D., Inc.*, 490 N.E.2d 764, 770–71 (Ind. Ct. App. 1986) (holding that a defendant bar's "failure to provide adequate security or to disperse or control an unruly crowd" was misfeasance).

## C

The basic principles underlying negligence per se are long-settled:

> Negligence per se is a form of ordinary negligence that results from violation of a statute. Negligence consists of "a departure from a standard of conduct required by the law for the protection of others against unreasonable risk of harm." Prosser, Contributory Negligence as a Defense to Violation of a Statute, 32 Minn. L. Rev. 105, 110 (1948). The standard for ordinary negligence is "the traditional standard of the reasonable man of ordinary prudence." *Id*. Negligence per se may exist when the reasonable person standard is supplanted by a standard of care established by the legislature. Such statutes are often penal statutes that do not provide for a civil action. The statute is said to express a policy for the protection of a certain class of persons. *See* Minn. Stat. s 126.20 (1980)

> (requiring protective eye glasses when operating machinery); *id.* s 609.675 (requiring owners of refrigerators to detach door before abandoning); *id.* s 624.21 (outlawing the sale of fireworks).  Thus, to violate the statute is to deviate from the standard of care owed to another.  *See Osborne v. McMasters*, 40 Minn. 103, 41 N.W. 543 (1889) (Mitchell, J.).  But, as pointed out by Prosser, negligence per se is not liability per se.  "(T)here remain (the defenses of) assumption of risk, contributory negligence and proximate cause * * *.  In short, such 'negligence per se' is merely ordinary negligence, whose existence is established by proof of the violation, but which once proved does not differ in its legal consequences from negligence at common law."  Prosser, supra, at 111-12.

*Seim v. Garavalia*, 306 N.W.2d 806, 810 (Minn. 1981).  Negligence per se does not arise from all statutory violations.  "[B]reach of a statute gives rise to negligence per se if [1] the persons *harmed by that violation are within the intended protection of the statute* and [2] the *harm suffered is of the type the legislation was intended to prevent.*"  *Alderman's Inc. v. Shanks*, 536 N.W.2d 4, 8 (Minn. 1995) (emphasis in original) (quoting *Pac. Indem. Co. v. Thompson-Yaeger, Inc.*, 260 N.W.2d 548, 558 (Minn. 1977)).  Here, the Behrs rely on two Minnesota statutes and a Hotel policy to show Radisson was negligent per se, but considered against the Amended Complaint's factual allegations, these authorities do not plausibly show negligence per se.

(1) The Behrs first rely on a Minnesota statute requiring Minnesota hotel operators to ensure their on-site employees receive state-approved training to combat sex trafficking, Minn. Stat. § 157.177.  *See* Am. Compl. ¶¶ 127–28.  For purposes of this statute, "sex trafficking" means "receiving, recruiting, enticing, harboring, providing, or obtaining by any means an individual to aid in the prostitution of the individual" or "receiving profit or anything of value" from these activities.  Minn. Stat. § 157.177, subdiv. 1; Minn. Stat.

§ 609.321, subdiv. 7a.  The Amended Complaint alleges on "information and belief" that "one indicator [of sex trafficking] for hotel employees to be alert to is groups of young people staying at the property and pay closer attention to this group [sic]."  Am. Compl. ¶ 129.

It is difficult to understand how this allegation might conceivably show negligence per se.  The first step in any negligence per se claim is to allege a statutory violation, *Seim*, 306 N.W.2d at 810, but the Amended Complaint nowhere alleges Radisson violated § 157.177.  The Amended Complaint does not allege that any Hotel employee did not receive the training § 157.177 required.  It is true the Amended Complaint alleges that Radisson "[f]ailed to adequately train" its employees, Am. Compl. ¶ 92(f), and that G4S disregarded federal and state laws "pertaining to hotel safety, monitoring, and patrolling for business invitees," *id.* ¶ 77(c), but these general allegations do not address Minn. Stat. § 157.177, or the statute's subject matter (sex-trafficking-prevention training) in any way. This fundamental problem aside, the attacks and injuries the Behrs suffered were not the kind of actions or harms "the legislation was intended to prevent."  *Alderman's*, 536 N.W.2d at 8 (quoting *Thompson-Yaeger, Inc.*, 260 N.W.2d at 558).  The Amended Complaint does not allege the Behrs were subject to sex trafficking as the statute defines the term, and there is no indication the statute was intended to prevent assaults generally.

(2) The Behrs next rely on a Minnesota statute requiring hotels within the state to "provide and keep . . . a suitable guest register for the registration of all guests provided with sleeping accommodations or other overnight stopping accommodations thereat" and that "every such guest shall be registered therein" on arrival.  Minn. Stat. § 327.10; *see*

Am. Compl. ¶¶ 117–18. The Amended Complaint does not allege the Hotel failed to "provide and keep" the register required by § 327.10. *See generally* Am. Compl. Though the Amended Complaint does not specifically allege the Hotel failed to register the assailants, *see generally id.*, that seems to be the intended inference, *see id.* ¶ 118. I assume § 327.10 was intended to deter crime and that, as a result, the Behrs' assaults were actions and harms the statute was intended to prevent. *See City of Los Angeles v. Patel*, 576 U.S. 409, 420 (2015) (explaining that a hotel-guest-registration ordinance's "recordkeeping requirement . . . deters criminals from operating on the hotel's premises").[8]

For procedural and substantive reasons, the Behrs' have not plausibly shown a causal relationship between the failure to register the assailants and the Behrs' injuries. Procedurally, the Behrs did not respond to Radisson's argument on this issue, *see* ECF No. 28 at 17–18 (describing Radisson's argument); *see generally* ECF No. 40 (showing the lack of a response), meaning the Behrs waived it, *Doe v. Mayorkas*, No. 22-cv-00752 (ECT/DTS), 2022 WL 4450272, at *2 (D. Minn. Sept. 23, 2022) (citing *Espey v. Nationstar*

---

[8] It is not obvious that Minn. Stat. § 327.10 was intended to prevent or deter crime. The parties have cited no authority discussing the statute's intent. Its focus seems to concern the investigation of crime. The statute provides "proper authorities" with a means of identifying a hotel's guests. *See* Minn. Stat. § 327.10 ("Such registration shall be kept in an accurate and orderly manner and retained for one year so that the same will be always accessible for inspection by the proper authorities."). Information contained on registries required by the statute has aided law enforcement in identifying persons suspected of criminal activities. *See, e.g.*, *State v. Leonard*, 943 N.W.2d 149, 153–54 (Minn. 2020) (describing officers' use of a hotel registry to identify the name of a suspected check forger); *State v. Blunt*, No. A05-1933, 2006 WL 923762, at *1 (Minn. Ct. App. Apr. 11, 2006) (describing officers' use of hotel registration to further criminal investigations). And no Minnesota case approves a negligence per se claim arising from a hotel guest's assault by a non-registered guest or visitor.

*Mortg.*, *LLC*, No. 13-cv-2979 (ADM/JSM), 2014 WL 2818657, at *11 (D. Minn. June 19, 2014) (collecting cases)). Waiver aside, there is no plausible causal relationship between a violation of § 327.10 and the Behrs' injuries. A negligence per se plaintiff must plausibly allege proximate cause. *Seim*, 306 N.W.2d at 810. "[F]or a party's negligence to be the proximate cause of an injury the act must be one which the party ought, in the exercise of ordinary care, to have anticipated was likely to result in injury to others . . . though he could not have anticipated the particular injury which did happen." *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995) (alteration in original) (quotation omitted). The defendant's conduct must have been "a substantial factor in bringing about the injury." *Id.* at 401–02 (quotation omitted). The substantial-factor element requires that the injury "follow[] in an unbroken sequence, without an intervening efficient cause, from the original [breach of duty]." *Boda v. Viant Crane Serv.*, LLC, No. 19-cv-1437 (HB), 2021 WL 4444733, at *12 (D. Minn. Sept. 28, 2021) (quoting *Green Plains Otter Tail, LLC v. Pro-Env't, Inc.*, 953 F.3d 541, 547 (8th Cir. 2020)), *aff'd*, 42 F.4th 935 (8th Cir. 2022). A criminal act by a third party that is not reasonably foreseeable is sufficient to break the causal chain. *Hilligoss v. Cross Cos.*, 228 N.W.2d 585, 586 (Minn. 1975). While the issue of proximate cause is typically a question of fact for the jury, "where reasonable minds can arrive at only one conclusion, proximate cause is a question of law." *Lubbers*, 539 N.W.2d at 402. Here, for reasons discussed earlier in Part IV.A., the Amended Complaint does not allege facts plausibly showing the assaults were reasonably foreseeable.

(3) The Behrs rely on the Hotel's policy capping a room's occupancy at four persons. Am. Compl. ¶¶ 121–25. This does not show negligence per se because an "internal policy does not have the force of law and [does] not per se establish a standard of care." *Kvalvog v. Lee*, No. A20-0693, 2021 WL 3027269, at *8 (Minn. Ct. App. July 19, 2021) (citing *Schmidt v. Beninga*, 173 N.W.2d 401, 408 (Minn. 1970)).

D

The Behrs claim G4S's Hotel-based employees were negligent and that, in turn, G4S is liable on a *respondeat superior* theory. *Id.* ¶¶ 69–74; *see Popovich v. Allina Health Sys.*, 946 N.W.2d 885, 890 (Minn. 2020) ("Under the doctrine of respondeat superior, 'an employer is vicariously liable for the torts of an employee committed within the course and scope of employment.'" (quoting *Schneider v. Buckman*, 433 N.W.2d 98, 101 (Minn. 1988))). In Minnesota,

> [o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if . . . he has undertaken to perform a duty owed by the other to the third person . . . .

*Walsh v. Pagra Air Taxi, Inc.*, 282 N.W.2d 567, 570–71 (Minn. 1979) (quoting Restatement (Second) of Torts § 324A (1965)); *see Erickson*, 447 N.W.2d at 170–71 (holding that a security firm owed a duty of care to a parking-garage patron because the firm "undertook to perform [the parking ramp's] duty" to protect its patrons from the criminal acts of third parties). In this situation, "a duty is only imposed if the resulting

23

injury was foreseeable." *Bjerke v. Johnson*, 742 N.W.2d 660, 667 (Minn. 2007).[9]  Again, for the same reasons discussed earlier in Part IV.A., the Amended Complaint does not plausibly allege the assaults were foreseeable.

E

The Behrs claim G4S negligently hired, supervised, and retained its employees.  *Id.* ¶¶ 75–79.  In Minnesota, negligent hiring and negligent retention "theories of recovery impose liability for an employee's intentional tort . . . when the employer knew or should have known that the employee was violent or aggressive and might engage in injurious conduct."  *Yunker v. Honeywell, Inc.*, 496 N.W.2d 419, 422 (Minn. Ct. App. 1993); *see Soto v. Shealey*, 331 F. Supp. 3d 879, 884–85 (D. Minn. 2018) (citing cases).  "Negligent supervision holds an employer liable for foreseeable conduct of an employee that harms another individual when the employer fails to exercise ordinary care when supervising the employee."  *Doe 598 v. Special Sch. Dist. No. 6*, No. A22-0945, 2023 WL 2637351, at *3 (Minn. Ct. App. Mar. 7, 2023) (citing *C.B. ex rel. L.B. v. Evangelical Lutheran Church in Am.*, 726 N.W.2d 127, 136 (Minn. Ct. App. 2007)); *see Doe 121 v. Diocese of Winona*, No. A18-0480, 2018 WL 4558318, at *4 (Minn. Ct. App. Sept. 24, 2018) (noting that, "[t]o make out a successful claim for negligent supervision, the plaintiff must prove . . . the employee's conduct was foreseeable" (citation omitted)).  An employee's "[n]onfeasance, [or] passive inaction or a failure to take steps to protect others from harm, is not enough"

---

[9]    According to G4S, it had no "special relationship" with the Behrs.  ECF No. 36 at 9. This is not correct.  *See Bjerke*, 742 N.W.2d at 665 (noting that the circumstances described in Restatement (Second) of Torts § 324A create a "special relationship").

to show an employer's negligent supervision. *Broadus v. Johnson*, No. 16-cv-1211 (WMW/SER), 2017 WL 11707857, at *12 (D. Minn. Apr. 27, 2017) (quoting *Doe 169*, 845 N.W.2d at 178).

The Amended Complaint does not plausibly allege these claims. The negligent hiring and negligent retention claims are not plausible because the Amended Complaint does not allege that any G4S employee committed an intentional tort. *See* Am. Compl. ¶¶ 76–78. The negligent supervision claim is not plausible because the Amended Complaint does not allege how or why it should have been foreseeable to G4S that any of its employees would negligently undertake their security-related duties, and because the assertedly negligent actions the Amended Complaint identifies are failures to act—or nonfeasance—not affirmative acts. *See id.* ¶ 78 (describing G4S employees' negligent acts as "failing to enforce or use the safety and security policies and procedures in place, failing to prevent the 5 males from entering room 505, failing to monitor and investigate loud guests and noises, failure to investigate signs of drug consumption, and failing to perform proper security floor sweeps").

F

The Behrs' claim that Radisson is liable for G4S's negligence on an "apparent authority" theory, Am. Compl. ¶¶ 95–112, is derivative of G4S's liability, *see Popovich*, 946 N.W.2d at 890–91 ("A business or individual—a principal—is vicariously liable under the doctrine of apparent authority where they hold an agent out 'as having authority' or 'knowingly' permit the agent to act on their behalf, and the agent is negligent." (footnote

omitted)).  In other words, the absence of a plausible negligence claim against G4S means the Behrs' apparent-authority claim against Radisson fails.

V

The Behrs requested that any dismissal be without prejudice, leaving them the option of amending the operative complaint a second time.  Courts ultimately have discretion to decide between a with-prejudice and without-prejudice dismissal.  *Paisley Park Enters. v. Boxill*, 361 F. Supp. 3d 869, 880 n.7 (D. Minn. 2019).  A dismissal with prejudice is typically appropriate when a plaintiff has shown "persistent pleading failures" despite one or more opportunities to amend, *Milliman v. County of Stearns*, No. 13-cv-136 (DWF/LIB), 2013 WL 5426049, at *16 (D. Minn. Sept. 26, 2013); *see Reinholdson v. Minnesota*, 01-cv-1650 (RHK/JMM), 2002 WL 32658480, at *5 (D. Minn. Nov. 21, 2002) (adopting R. & R.), or when the record makes clear that any amendment would be futile, *Paisley Park*, 361 F. Supp. 3d at 880 n.7.  On the other hand, when a plaintiff's claim "might conceivably be repleaded with success," dismissal without prejudice may be justified.  *Washington v. Craane*, No. 18-cv-1464 (DWF/TNL), 2019 WL 2147062, at *5 (D. Minn. Apr. 18, 2019), *R. & R. adopted*, 2019 WL 2142499 (D. Minn. May 16, 2019).

Here, for practical and legal reasons, the better answer is to allow the Behrs the opportunity to file an amended pleading in which they may attempt to cure the dismissal-worthy problems described in this order.  As a practical matter, the process of briefing and adjudicating Defendants' motions resulted in the refinement and identification of the dispositive issues in ways that may not have been clear when the Behrs filed their Amended Complaint.  And the deficiencies identified with the Amended Complaint

concern factual gaps that might conceivably be filled in an amended pleading.  The Amended Complaint will therefore be dismissed without prejudice, and the Behrs will be given a deadline by which they may (but are not required to) file a Second Amended Complaint.  If they opt not file a Second Amended Complaint by the prescribed deadline, the Amended Complaint will be dismissed with prejudice, and judgment will be entered.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.      Defendant Radisson Hotels Management Company, LLC's Motion to Dismiss [ECF No. 22] is **GRANTED**.

2.      Defendant G4S Secure Solutions (USA), Inc.'s Motion for Judgment on the Pleadings [ECF No. 33] is **GRANTED**.

3.      The Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.

4.      On or before May 30, 2025, Plaintiffs Dominique and Tessa Behr may file a second amended complaint.  If no second amended complaint is filed by that deadline, judgment will be entered dismissing the Amended Complaint with prejudice.


Dated:  May 9, 2025                        s/ Eric C. Tostrud
                                           Eric C. Tostrud
                                           United States District Court