UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Dominique Behr and Tessa Behr,    File No. 24-cv-2183 (ECT/EMB)

      Plaintiffs,

v.    **OPINION AND ORDER**

G4S Secure Solutions (USA), Inc., and
Radisson Hotels Management Company,
LLC, *successor in liability for RB
Minneapolis Management LLC*,

      Defendants.

---

Christopher A. Johnston and Christopher P. Martineau, Johnston Martineau, PLLP, Roseville, MN, for Plaintiffs Dominique Behr and Tessa Behr.

Lukas Belflower, Lance D. Meyer, and Michael M. Skram, O'Meara Wagner, P.A., Minneapolis, MN, for Defendant G4S Secure Solutions (USA), Inc.

Jeffrey M. Markowitz and Sarah E. Bushnell, Arthur, Chapman, Kettering, Smetak & Pikala, PA, Minneapolis, MN, for Defendant Radisson Hotels Management Company, LLC.

---

    Plaintiffs Dominique and Tessa Behr are sisters. In February 2021, they spent one night at the Radisson Blu Downtown Minneapolis Hotel (the "Hotel"). That night, five males gained access to the Behrs' room and assaulted them over several hours. The assaults were especially brutal. As the operative Second Amended Complaint describes them, the Behrs "were subjected to savage sexual assaults and battery" over several hours, and Tessa was "shot multiple times by one or more of the males." The Behrs brought this case against the Hotel's successor entity, Radisson Hotels Management Company ("Radisson"), and

the entity responsible for providing security services at the Hotel when the assaults occurred, G4S Secure Solutions (USA) ("G4S"). The Behrs claim that Radisson and G4S were negligent and are therefore liable for the injuries they suffered from the assaults.

Radisson and G4S seek the Second Amended Complaint's dismissal under Federal Rule of Civil Procedure 12(b)(6). This is the case's second round of dispositive motions. In the first, Radisson sought dismissal under Rule 12(b)(6), and G4S sought judgment on the pleadings under Rule 12(c). I granted both motions primarily because the prior iteration of the Behrs' complaint did not plausibly allege the assaults were foreseeable or that either Defendant committed misfeasance. The Behrs were given the opportunity to file a second amended complaint, and they have done so. *See Behr v. Radisson Hotels Mgmt. Co.*, No. 24-cv-2183 (ECT/DJF), 2025 WL 1360699 (D. Minn. May 9, 2025). Though the Second Amended Complaint adds allegations regarding the assailants, their behaviors, and the Hotel's security policies, the law leads to the same result for the same basic reasons—the Behrs did not allege facts plausibly showing the assaults were foreseeable in the relevant sense or that either Defendant committed misfeasance.

I[1]

Dominique and Tessa Behr stayed at the Radisson Blu Hotel in downtown Minneapolis the night of Friday, February 19, 2021, to Saturday, February 20. Second

---

[1] In accordance with the standards governing Rule 12(b)(6) motions, the facts are drawn entirely from the Second Amended Complaint. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). Unlike the first round of dispositive motions, in this round, Defendants did not rely on extra-complaint materials to support their motions, making it unnecessary to consider whether it might be appropriate to consider such materials here. *See Behr*, 2025 WL 1360699, at *2.

Am. Compl. [ECF No. 49] ¶¶ 2, 14. After checking in and spending time at the Hotel, the Behrs left for a short time. *Id.* ¶ 41. Before leaving, the Behrs told Radisson employee Melissa Skiba that they smelled marijuana in the Hotel. *Id.* ¶ 95. While the Behrs were away, a group of five males sought entry into the Hotel. *Id.* ¶ 42.

The Second Amended Complaint adds information about the five males that was not in the First Amended Complaint. The males entered the Hotel around 1:00 a.m. *Id.* ¶ 99. When they entered, the males were wearing dark clothing, kept their hands in their pockets, and at least two were wearing masks, "surgical or otherwise." *Id.* ¶ 107. They had a single backpack between them, which concealed a bottle of whiskey. *Id.* ¶¶ 107, 113. One male was "stumbling," suggesting "possible intoxication." *Id.* ¶ 103. One male carried a concealed firearm. *Id.* ¶ 102. All appeared young—four were eighteen years old, and the fifth was under eighteen. *Id.* ¶¶ 100–01. The males were not accompanied by anyone who was twenty-one years old. *Id.* ¶ 106. For context, guests must be at least twenty-one years old to rent a room at the Hotel, *id.* ¶ 72, and Hennepin County (where the Hotel is located) at the time set a midnight weekend curfew for fifteen-to-seventeen-year-olds, *id.* ¶ 73.

The males encountered a G4S security guard at the Hotel's entrance, who asked whether the males possessed a room key. *Id.* ¶¶ 37, 43–44. The males presented one room key, and the G4S guard let the group into the Hotel. *Id.* ¶ 52. The guard did not ask the males for their names or whether they had registered with the Hotel. *Id.* ¶¶ 52–54. The males entered the Behrs' room. *Id.* ¶ 56.

3

The Behrs returned to their room, where they encountered the males. *Id.* ¶¶ 57–58. One of the males had a firearm, and "at least one of the males blocked the door" preventing the Behrs from exiting the room. *Id.* ¶¶ 59–60. "[O]ver the next several hours," the Behrs "were subjected to savage sexual assaults and other assaults and battery." *Id.* ¶ 61. "[A]t some point during the sexual assaults, . . . Plaintiff [Tessa Behr] was also shot multiple times by one or more of the males . . . [and] was also subjected to being repeatedly doused with a liquid in attempts to further humiliate her." *Id.* ¶¶ 67–68. The assaults lasted "several hours" and ended around 7:00 a.m. on February 20. *Id.* ¶¶ 61, 69.

The assaults generated noises "loud enough to be heard outside" the Behrs' room. *Id.* ¶ 63. These noises awakened two guests who were staying on the same floor as the Behrs, *id.* ¶ 66, though the Second Amended Complaint does not allege that these two guests reported what they heard to anyone associated with the Hotel. "[N]o security personnel or other employees of any of the defendants ever noticed the assaults taking place" or intervened to stop them. *Id.* ¶ 71.

In the seven months preceding the assaults, police were called to the Hotel many times for various issues including reports of domestic abuse, a stabbing, a robbery, assaults, fights, many instances of "[u]nwanted/suspicious person/trouble," loud parties, a person with a gun, a person with an unspecified weapon, disturbances, drug activity, and a "dead person." *Id.* ¶ 28. The Hotel was in downtown Minneapolis, which in 2021 experienced an increase in violent crime of 21% when compared with 2020. *Id.* ¶ 29.

The Behrs assert three causes of action, one against G4S and two against Radisson. The Behrs claim G4S was negligent. *Id.* ¶¶ 135–89 (Count One). The Behrs claim that

4

Radisson is liable as principal for the actions of G4S, its apparent agent. *Id.* ¶¶ 198–225 (Count Three). And the Behrs assert an innkeeper-liability claim against Radisson. *Id.* ¶¶ 226–48 (Count Four).² For relief, the Behrs seek damages for physical injuries, pain and suffering, and emotional distress, and recovery of incurred and future medical expenses. *Id.* ¶¶ 130–34.

II

A

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs must allege facts that "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

---

² In Count Two, the Behrs allege that G4S is vicariously liable for its employees' negligent and reckless acts under a respondeat superior theory. Second Am. Compl. ¶¶ 190–97. At the hearing, the Behrs clarified that Count Two is not an independent cause of action. Rather, Count Two alleges a theory under which G4S is allegedly liable for negligence under Count One.

5

B

The Second Amended Complaint's causes of action are, at their foundation, negligence claims. "Negligence is the failure to exercise the level of care that a person of ordinary prudence would exercise under the same or similar circumstances." *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014). Under Minnesota law, a plaintiff alleging negligence must show "(1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) that the breach of the duty was a proximate cause of the injury." *Id.* Ordinarily, "a person does not owe a duty of care to another—e.g., to aid, protect, or warn that person—if the harm is caused by a third party's conduct." *Id.* at 177–78. This case fits the "no duty to protect from a third party" rule—that is, third parties (the male attackers) injured the Behrs, and the Behrs claim that Radisson and G4S failed to protect them from the assailants.

1

Under Minnesota law, a person has a duty to protect another from harm caused by a third party (notwithstanding the general rule) "when there is a special relationship between a plaintiff and a defendant and the harm to the plaintiff is foreseeable." *Doe 169*, 845 N.W.2d at 178 (citing *Domagala v. Rolland*, 805 N.W.2d 14, 23 (Minn. 2011)). A "special relationship" is typically found in circumstances where "the plaintiff is in some respect particularly vulnerable and dependent on the defendant, who in turn holds considerable power over the plaintiff's welfare." *Donaldson v. Young Women's Christian Ass'n of Duluth*, 539 N.W.2d 789, 792 (Minn. 1995) (citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 56, at 374 (5th ed. 1984)). In Minnesota, a special

6

relationship exists between hotels (or "innkeepers") and their guests. *See id.* Therefore, a hotel owes a duty to its guests to protect them "against foreseeable risk of danger attendant upon the maintenance and operation of [the] property." *Connolly v. Nicollet Hotel*, 95 N.W.2d 657, 663 (1959); *see Yang v. Voyagaire Houseboats, Inc.*, 701 N.W.2d 783, 790–91 (Minn. 2005) ("Innkeepers generally have a duty to take reasonable action to protect their guests."). I understand the Second Amended Complaint to assert that both G4S and Radisson are liable because they possessed a "special relationship" with the Behrs on the night of the assaults, so Counts One and Four are considered together.

As explained in the order dismissing the First Amended Complaint, "the foreseeability question should not be framed widely, but rather by reference to the specific injury-producing chain of actions at issue." *Behr*, 2025 WL 1360699, at *4 (citing *T.W. ex rel. McKenzie v. Walmart Stores, Inc.*, No. 22-cv-1584 (PJS/ECW), 2023 WL 3646685, at *5–7 (D. Minn. May 25, 2023)). Minnesota law requires courts to "look at whether the specific danger was objectively reasonable to expect, not simply whether it was within the realm of any conceivable possibility." *Whiteford ex rel. Whiteford v. Yamaha Motor Corp., U.S.A.*, 582 N.W.2d 916, 918 (Minn. 1998). Put another way, "[t]he test is not whether the precise nature and manner of the plaintiff's injury was foreseeable, but whether 'the possibility of an accident was clear to the person of ordinary prudence.'" *Domagala*, 805 N.W.2d at 27 (quoting *Connolly*, 95 N.W.2d at 664).

The Behrs did not meet that standard the first time around. Their then-operative complaint "d[id] not allege facts plausibly showing it was foreseeable to the Hotel that the five males who attacked the Behrs would assault Hotel guests." *Behr*, 2025 WL 1360699,

7

at *5. Key to this pleading failure was the absence of allegations regarding the males' characteristics that could "plausibly show it was 'objectively reasonable to expect' or 'clear to the person of ordinary prudence' that the males would assault Hotel guests." *Id.* (citations omitted) (first quoting *Whiteford*, 582 N.W.2d at 918; and then quoting *Connolly*, 95 N.W.2d at 664). For example, there were

> no allegations that anyone in the group was intoxicated, carrying a visible weapon, uttering threats, or acting in a threatening or harassing manner. Nor [were] there allegations that anyone in the group had a criminal record or had engaged in other past conduct indicative of a then-present danger of which Radisson or G4S was aware.

*Id.* The Second Amended Complaint adds allegations regarding the assailants' characteristics, but whether considered separately or together, these added allegations do not plausibly show it was objectively reasonable for G4S or Radisson to expect the males to assault Hotel guests.

The Second Amended Complaint alleges the males wore dark clothing, that one wore "a black/down/puffy jacket with fur on the coat hood and a square belt buckle," another "an orange baseball cap and . . . a black t-shirt," and a third "a dark gray sweatsuit." Second Am. Compl. ¶ 101(a)–(c). It is difficult to understand why wearing dark clothing or the other items might conceivably (much more plausibly) suggest impending violent behavior. The Behrs do not, for example, allege that these items were associated with a criminal street gang or somehow indicative of a bad or violent actor. Wearing a heavy coat on a hot summer day might raise concerns, but these events occurred in February.

8

The Second Amended Complaint alleges the males (or some of them) kept their hands in their pockets. *Id.* ¶ 107. Without more, this fact does not plausibly show it was foreseeable that the group (or any one of them) would assault Hotel guests. This allegation describes common behavior, especially on a winter evening in Minnesota. Again, it might be different had the males refused a request to remove their hands from their pockets, but there is no allegation that a G4S or Radisson employee asked them to do that.

The Second Amended Complaint alleges that "at least two individuals [were] wearing masks (surgical or otherwise) concealing their face." *Id.* ¶ 107. For context-specific reasons, this allegation does not show foreseeability. In February 2021, many people wore surgical or other masks because of COVID-19. Indeed, at that time, the State of Minnesota mandated they be worn in hotel lobbies. *See* Emergency Exec. Order No. 20-81 ¶ 2 (Minn. July 22, 2020) (requiring Minnesotans to "wear a face covering in indoor businesses and indoor public settings"); Emergency Exec. Order No. 21-23 ¶ 2 (Minn. May 14, 2021) (rescinding Emergency Executive Order No. 20-81 ¶ 2). The Second Amended Complaint nowhere indicates that the masks' visible features suggested the males' purpose was to conceal their identity rather than to follow the public health mandate.

The Second Amended Complaint alleges that one male (and no others) carried a backpack that concealed a bottle of whiskey and that one possessed a concealed firearm. Second Am. Compl. ¶¶ 102, 112–13. It is difficult to understand how the concealed items' presence might change the analysis. If G4S and Radisson couldn't observe the items, how could their presence possibly have caused G4S or Radisson to foresee the risk of criminal behavior? The Behrs argue that "a single backpack [shared] between five males" is "more

9

consistent with transporting alcohol or illicit items." *Id.* ¶ 171(h). This is not persuasive. There are innumerable innocent reasons for one person in a group of five (or more) to carry one backpack. Here, for example, as Radisson observed, the fact that the males presented a room key suggested they had already checked in. ECF No. 62 at 16. That they lacked other luggage was hardly unusual. The Behrs identify nothing about the backpack itself suggestive of an any impending crime, much more an assault.

The Second Amended Complaint alleges that the males appeared to be under twenty-one years of age and that one male's stumbling showed he was intoxicated. Second Am. Compl. ¶¶ 103, 105. From these allegations, it seems reasonable to infer at least one male had been unlawfully drinking. *See* Minn. Stat. § 340A.503, subdiv. 1(a)(2). The question then is whether his apparent intoxication would make it "objectively reasonable to expect, or clear to the person of ordinary prudence, that the males would assault Hotel guests." *Behr*, 2025 WL 1360699, at *5 (citation modified). The better answer is no. There is no indication the intoxicated male was violent. The Second Amended Complaint does not allege he was behaving aggressively or threateningly as he entered the premises. The Behrs do not allege that Defendants had any knowledge of any past criminal or belligerent behavior he may have had. He was stumbling and looked drunk; that did not make an assault plausibly foreseeable. One court applying Louisiana law came to a similar conclusion. In *Finch v. HRI Lodging, Inc.*, 152 So. 3d 1039, 1045 (La. Ct. App. 2014), the court found that a husband's assault of his wife in their hotel room was not foreseeable to a security guard who checked on them following a noise complaint. The guard observed they were intoxicated, and that the wife had a facial injury, but she told the guard she was

fine and did not need medical attention. *Id.* There was no other evidence of "discord or contentious behavior" between them. *Id.* On those facts, it was not foreseeable the husband would commit assault. *Id.*

That the intoxicated male was under twenty-one makes no difference. His age bears on whether he had committed a separate offense—underage drinking—but it does not make it objectively reasonable to believe he or the other males would assault Hotel guests. Under Minnesota's narrowly framed inquiry, a nonviolent offense like underage drinking, without more, does not make a violent offense like assault reasonably foreseeable. *See T.W.*, 2023 WL 3646685, at *5–6. Without incorporating the innkeeper-liability standard from bar cases, *see Behr*, 2025 WL 1360699, at *6 (explaining that hotel and bar innkeeper-liability claims have different elements), it seems worth noting that assaults in bars are usually foreseeable when patrons are drunk *and* belligerent or disorderly or engaged in "problematic interactions with bar employees and other patrons," *Henson v. Uptown Drink, LLC*, 922 N.W.2d 185, 193 (Minn. 2019); *see McDonough v. Toles*, 476 F. Supp. 3d 882, 895–96 (D. Minn. 2020) (collecting cases). The same reasoning holds here. As the Eleventh Circuit explained in a different context, "[a] 'single incident' can't 'constitute constructive notice' of a risk when the incident is completely 'different in kind' from the risk." *J.F. ex rel. S.F. v. Carnival Corp.*, 141 F.4th 1164, 1173 (11th Cir. 2025) (quoting *Fuentes v. Classica Cruise Operator Ltd., Inc.*, 32 F.4th 1311, 1320 (11th Cir. 2022)) (holding that an underage guest attempting to smuggle alcohol on board did not make the sexual assault he later committed foreseeable to the defendant cruise line).

The Behrs argue other criminal or suspicious activity shows the assaults were foreseeable—at least one of the males was violating curfew, the males were too young to be registered at the Hotel, and there was the smell of marijuana in the Hotel—but these allegations do not plausibly show foreseeability. Start with the County curfew violation. *See* Am. Compl. ¶¶ 73–74, 83–88, 104. The curfew required juveniles ages fifteen to seventeen not to be out after midnight on weekends. Am. Compl. ¶ 73; *see* Hennepin County, Minn., Ordinance 16 § 3(c)(1)(B). The purpose of the curfew ordinance was to reduce juvenile crime and victimization. Hennepin County, Minn., Ordinance 16 § 1(d) ("A county-wide curfew will reduce juvenile victimization and crime and will advance public safety, health, and general welfare."). The Behrs allege that "this curfew law was, at a minimum, a tool to use in enforcement of the hotel and its security policies, practices, and procedures to deter, detect, and deny access to threats attempting to gain access to the hotel." Second Am. Compl. ¶ 88. Violation of curfew was indicia, they claim, "of possible criminal activity by the young males that required investigation into their intentions to enter the property." *Id.* ¶ 104. This is not persuasive. The sole connection between curfew violations and violence is the ordinance's statement that "the crimes committed by and against juveniles have become more violent," and that "[a] significant percentage of juvenile crime occurs during curfew hours." *Id.* ¶ 74(a) (quoting Hennepin County, Minn., Ordinance 16 § 1(a)). That's not enough to make the assaults foreseeable. Minnesota's narrow foreseeability inquiry demands a more "specific injury-producing chain of actions." *Behr*, 2025 WL 1360699, at *4 (citing *T.W.*, 2023 WL 3646685, at *5–7). The Behrs cite no case law to support the proposition that a curfew violation makes it plausibly foreseeable

that the violator would commit assault. *See* ECF Nos. 65–66. And the opposite conclusion is consistent with persuasive case law holding, albeit in other contexts, that curfew violations do not make violence foreseeable. *See Rodriguez v. Spencer*, 902 S.W.2d 37, 45 (Tex. Ct. App. 1995) (finding that a son's curfew violations did not make his violent attack foreseeable to his mother); *Romero v. Superior Ct.*, 107 Cal. Rptr. 2d 801, 816 (Cal. Ct. App. 2001) (finding that knowledge of a juvenile's past curfew violations but not his other misconduct did not make his sexual assault foreseeable).

The Behrs argue that none of the males appeared to meet the minimum check-in age, so there were "immediate concerns about unauthorized access and false registration." Second Am. Compl. ¶ 105 (noting guests had to be twenty-one years old to register at the Hotel). Suspicions should have remained, they argue, even after the males presented a room key—the key could have been stolen, and the five males exceeded the four-person room limit. *Id.* ¶¶ 109–11. As with the other allegations, these facts do not make an assault foreseeable. The policy violations described do not suggest violence. And to the extent the Behrs seek to make a negligence per se claim, the Hotel's four-person room occupancy limit and minimum check-in age are internal policies without the force of law.[3] *See Kvalvog v. Lee*, No. A20-0693, 2021 WL 3027269, at *8 (Minn. Ct. App. July 19, 2021).

The same goes for the odor of marijuana in the Hotel. The Behrs do not explain how other people's drug use would put a reasonably prudent person on notice that the males

---

[3] The complaint describes the check-in age requirement as a Hotel policy, *see* Second Am. Compl. ¶ 171(c), and the parties identify no Minnesota statute governing minimum age to book a hotel room.

13

would commit assaults. Their theory is that the smell of marijuana should have required a security guard to investigate, and during that investigation the guard would have discovered the males assaulting or about to assault the Behrs. *See* Second Am. Compl. ¶¶ 79–82. As explained above, that is not how Minnesota law requires courts to determine foreseeability in this context. *See T.W.*, 2023 WL 3646685, at *5–7 (explaining the narrow framing).

The Behrs repeat an argument from their opposition to the previous Rule 12 motions—that a recent surge in violent crime in downtown Minneapolis made the assaults foreseeable. Second Am. Compl. ¶¶ 24–32, 45, 116–19. They cite a list of police calls to the Hotel in the months before and after February 2021, and that list includes two assaults and many instances of "[u]nwanted/suspicious person/trouble." *Id.* ¶ 28(d), (f). This argument fails for the same reasons as before. Allegations of increased local crime "do not address the specific events leading to the Behrs' assaults." *Behr*, 2025 WL 1360699, at *6. Neither do allegations of crime at the Hotel. Contrast these assertions with *Connolly*. There, the court determined—on appeal of a judgment notwithstanding the verdict—that the hotel's awareness that guests were dropping items from the upper floor windows onto the adjacent sidewalk made injury to the plaintiff (a pedestrian on the sidewalk) "within the range of foreseeability." 95 N.W.2d at 665–66. In other words, the *Connolly* hotel knew about recent, similar misconduct, which put them on notice to expect the plaintiff's injury. We don't have that here. While Minnesota courts may infer negligence "from all the facts and surrounding circumstances," *id.* at 669, the Behrs' nondescript allegations of crime and suspicious activity at the Hotel do not make the assaults foreseeable.

By contrast, consider a recent opinion from another court in this District, *Wiley v. Fleet Farm*, --- F. Supp. 3d ---, No. 24-cv-4135 (LMP/JFD), 2025 WL 2601952 (D. Minn. Sep. 9, 2025). There, Judge Laura M. Provinzino determined that the plaintiffs plausibly alleged their gunshot injuries were foreseeable to the defendant bar. *Id.* at *29. The facts making the injury foreseeable were: (1) the county sheriff "predicted a day before the shooting that the crowded, party atmosphere at [the] bar would eventually lead to a shooting"; and (2) "in the year preceding the shooting, the St. Paul Police Department was called to [the] bar on numerous occasions for violent and criminal incidents." *Id.* Here, the facts are materially different. There are no allegations anyone predicted an assault like the one the Behrs suffered would occur at the Hotel. To the extent the Second Amended Complaint alleges predictable wrongdoing at the Hotel, it claims Hotel staff knew people were smoking marijuana on the premises—an entirely different offense. The Behrs allege that police had been called about suspicious persons and two assaults in the months leading up to February 2021, but don't assert these past concerns occurred in the same or similar fashion as the males' assaults of the Behrs.[4]

---

[4] As further contrast, at least one other court has found liability when the defendant hotel was on notice about the likelihood of unauthorized visitors. In *Meyers v. Ramada Hotel Operating Co.*, a man followed the plaintiff down the elevator, forced his way into her room, and raped her. 833 F.2d 1521, 1522 (11th Cir. 1987) (per curiam) (applying Florida law). The court found evidence of violent and sexual offenses on the premises and at another nearby hotel relevant "to an extent" to determining foreseeability, alongside "the presence of suspicious individuals around the premises, and peculiar security problems associated with the hotel," namely, that the hotel contained bars open to outsiders which could only be reached by using the hotel's elevators or stairwells. *Id.* at 1523–24. The factual allegations in *Meyers* connected the past criminal and suspicious activity to the plaintiff's injury, making the injury foreseeable. The allegations here don't make that connection.

2

Minnesota "negligence law imposes a general duty of reasonable care when the defendant's own conduct creates a foreseeable risk of injury to a foreseeable plaintiff." *Domagala*, 805 N.W.2d at 23. "In other words, when a person acts in some manner that creates a foreseeable risk of injury to another, the actor is charged with an affirmative duty to exercise reasonable care to prevent his conduct from harming others." *Id.* at 26. In *Fenrich v. The Blake School*, the Minnesota Supreme Court described the "own conduct" duty as a second exception (after the special-relationship exception) to the general rule that "a person does not owe a duty of care to another . . . if the harm is caused by a third party's conduct." 920 N.W.2d 195, 201–02 (Minn. 2018) (quotation omitted). The court also explained that, at least when applied in cases involving harm caused by a third party, a defendant's conduct must amount to "misfeasance" to trigger the "own conduct" duty. *Id.* at 203. "If a defendant's conduct is mere nonfeasance, that defendant owes no duty of care to the plaintiff for harm caused by a third party." *Id.* (citing *Doe 169*, 845 N.W.2d at 178). "Misfeasance is active misconduct working positive injury to others." *Id.* (quotation omitted). "Nonfeasance is passive inaction or a failure to take steps to protect others from harm." *Id.* (citation modified). Characterizing a defendant's action or inaction as misfeasance and nonfeasance can present a problem of "confounding complexity." *Domagala*, 805 N.W.2d at 22.

As I understand the Second Amended Complaint, the Behrs also allege an "own conduct" theory of negligence. They expand their earlier argument that Radisson and G4S's internal policies were designed to spot and prevent such attacks, and that the failure

16

to carry out those policies caused the Behrs' injuries.  Second Am. Compl. ¶¶ 46–48, 85–88, 142–67; *see* ECF No. 65 at 23–29 (arguing for "Count 3: 'Own conduct,'" though the Second Amended Complaint does frame any cause of action that way); ECF No. 66 at 11–12 (arguing that "Defendants' acts amounted to more than nonfeasance").

This contention fails for two reasons.  First, as discussed above, the Behrs have not established that there was a foreseeable risk of injury.  *See Connolly*, 95 N.W.2d at 665.  Second, the Behrs allege nonfeasance, not misfeasance.  For example, the Behrs' opposition brief to G4S's motion lists the following failures:

> First, after looking at the group, security *failed* to confirm that the key card presented was, in fact, issued by the hotel. Second, despite having been provided with the hotel guest's registry, security *did not* verify that the individuals were registered guests.  Third, occupancy limits—previously enforced just hours before—were *disregarded* at the time of the incident.

ECF No. 66 at 12 (emphasis added).  In the Second Amended Complaint, the Behrs allege that G4S and Radisson "should have been heightened to be on the lookout for contraband given the prior report of marijuana on the premises" but were not.  Second Am. Compl. ¶ 114.  They allege that "established hotel policy and industry-standard training[] required [G4S] and/or [Radisson] to thereafter go up to the 5th floor and investigate any signs of criminal activity or violations of the hotel policy." *Id.* ¶ 124.  And they allege that the "history of criminal activity" in downtown Minneapolis "would have, and should have, alerted a reasonable security company for the need to utilize heightened vigilance, [and] evaluate and re-evaluate its employees, training and supervision over the employees at the property." *Id.* ¶ 166.  The Behrs' theory is that, despite these duties and presumed

17

knowledge, G4S and Radisson failed to act. The guard's "actions of not stopping the young men by obtaining personal identification, identifying names, ages, or registration information compared with the hotel guest ledger, breached his duty to provide security services to protect the hotel's guests, including the Plaintiffs." *Id.* ¶ 174. G4S "fail[ed] to conduct regular patrols of the hotel floors," *id.* ¶ 179, and "performed its perimeter searches unreasonably, negligently, or not at all," *id.* ¶ 185. This is all nonfeasance. Each allegation describes "passive inaction" rather than "active misconduct." *Fenrich*, 920 N.W.2d at 203 (quoting *Doe 169*, 845 N.W.2d at 178). These allegations cannot plausibly establish negligence on the own-conduct theory. *See id.*[5]

### III

A dismissal with prejudice is typically appropriate when a plaintiff has shown "persistent pleading failures" despite one or more opportunities to amend, *Milliman v. County of Stearns*, No. 13-cv-136 (DWF/LIB), 2013 WL 5426049, at *16 (D. Minn. Sep. 26, 2013); *see Reinholdson v. Minnesota*, 01-cv-1650 (RHK/JMM), 2002 WL 32658480, at *5 (D. Minn. Nov. 21, 2002) (adopting R. & R.), or when the record makes clear that any amendment would be futile, *Paisley Park Enters. v. Boxill*, 361 F. Supp. 3d 869, 880 n.7 (D. Minn. 2019). Here, a with-prejudice dismissal is appropriate. The Behrs have twice amended their complaint, the second time with the benefit of an order outlining the

---

[5] The Behrs assert two theories derivative of the innkeeper and own-conduct exceptions: that G4S is liable under respondeat superior for its employees' negligence, Second Am. Compl. ¶¶ 190–97, and that Radisson is liable for G4S's negligence on an apparent-authority theory, *id.* ¶¶ 198–225. Because there is no direct liability, the derivative theories also fail to state a claim on which relief can be granted.

"factual gaps" that needed filling. *Behr*, 2025 WL 1360699, at *11. They have not added allegations "nudg[ing] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. They have not asked for the chance to file a fourth iteration of their complaint. And they have not indicated what additional allegations they might add to cure the problems identified in this order.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendant G4S Secure Solutions (USA), Inc.'s Motion to Dismiss [ECF No. 54] is **GRANTED**.

2. Defendant Radisson Hotels Management Company, LLC's Motion to Dismiss [ECF No. 60] is **GRANTED**.

3. The Second Amended Complaint [ECF No. 49] is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 3, 2025          s/ Eric C. Tostrud
                                Eric C. Tostrud
                                United States District Court